## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ITS Innovations LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Plano Synergy Holdings, Incorporated, ) <br> an Illinois corporation, ) <br> ) <br> Synergy Outdoors, LLC, a Louisiana corporation, ) <br> ) <br> WildGame Innovations, a Louisiana corporation, ) <br> ) <br> Flextone Game Calls, a Texas business, ) <br> ) <br> and ) <br> ) <br> The Sports Products, LLC, a Michigan corporation, ) <br> ) <br> Defendants. ) <br> ) | **CASE NO.**  1:15-CV-625 (MAD/CFH) |

### PLAINTIFF'S COMPLAINT

Plaintiff, ITS Innovations, LLC for its complaint against Defendants Plano Synergy Holdings, Synergy Outdoors, WildGame Innovations, Flextone Game Calls, and The Sports Products (hereinafter collectively referred to as "the Defendants") states as follows:

### INTRODUCTION

1.  This action is based upon patent infringement, unfair competition, and breach of contract.

**THE PARTIES**

2.     Plaintiff ITS Innovations, LLC is a limited liability company organized under the laws of the State of New York.

3.     Plaintiff's address is 150-17 12th Road Whitestone, New York 11357.

4.     Plaintiff designs and manufactures hunting equipment and decoys, including a patented product known as The Little Runt.

5.     Upon information and belief, Defendant Plano Synergy Holdings is an Illinois corporation.

6.     Upon information and belief, Defendant Plano Synergy Holdings owns and operates multiple brands of hunting and outdoor gear including WildGame Innovations and Flextone Game Calls.

7.     Upon information and belief, Defendant Plano Synergy Holdings was formed by the merger of Plano Molding Company and Defendant Synergy Outdoors, LLC.

8.     Upon information and belief, Defendant Plano Synergy Holdings makes and sells game cameras; game foods and seeds; and hunting, fishing, and archery equipment.

9.     Upon information and belief, Defendant Plano Synergy Holdings owns, operates, or is otherwise affiliated with Defendant Flextone Game Calls.

10.     Upon information and belief, Defendant Plano Synergy Holdings owns, operates, or is otherwise affiliated with Defendant WildGame Innovations.

11.     Defendant WildGame Innovations LLC, is a limited liability corporation organized under the laws of the state of Louisiana with a principal place of business at 2261 Morganza Highway, New Roads, Louisiana 70760.

2

12.     Defendant WildGame Innovations, LLC designs and manufacturers hunting equipment.

13.     Upon information and belief, Defendant WildGame Innovations owns, operates, or is otherwise affiliated with Defendant Flextone Game Calls.

14.     Upon information and belief, Defendant Flextone Game Calls is a division or other subsidiary of Defendant Plano Synergy Holdings.

15.     Upon information and belief, Defendant Flextone Game Calls is a Texas corporation with a principle place of business at 602 Fountain Parkway, Grand Prairie, Texas 75050.

16.     Upon information and belief, Defendant Flextone Game Calls also maintains a business address at 101 Cason Road, Broussard, Louisiana 70518.

17.     Defendant Flextone Game Calls designs and manufactures hunting equipment and decoys.

18.     Defendant Flextone Game Calls and its affiliated companies sell these products on the internet through its website www.flextonegamecalls.com.

19.     Upon information and belief, Defendant Flextone Game Calls and its affiliated companies sell and ship its products to customers in New York as well as throughout the United States.

20.     Defendant Flextone Game Calls and its affiliated companies maintain multiple authorized dealers (hereinafter "the Dealers") in the state of New York.

21.     Upon information and belief, Defendant Flextone Game Calls advertises, offers for sale, and sells its products through the Dealers.

22.     Defendant Flextone Game Calls advertises the Dealers on its website and lists that the Dealers are located in Plattsburgh, Syracuse, Slingerlands, Queensbury, Crown Point, Redhook, Valatie, and Patchouge, New York as shown in Exhibit A.

23.     Upon information and belief, Defendant Flextone Game Calls contracts to sell its products to the Dealers for resale in New York, or offers its products for sale in New York through the Dealers.

24.     Defendant The Sports Products, LLC is a Michigan corporation having a principal place of business at 2006 S. Main Street Suite 204, Wake Forest, North Carolina 27587.

25.     Defendant The Sports Products makes various products for well-known brand name companies for eventual retail around the country.

26.     Upon information and belief, Defendant The Sports Products manufactures products for Defendant Flextone Game Calls for sale within and shipment to New York.

## JURISDICTION AND VENUE

27.     This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284-285.  This Court has original subject matter jurisdiction over this patent infringement action pursuant to 28 U.S.C. § 1331 and § 1338(a).

28.     This Court has original subject matter jurisdiction over this unfair competition action pursuant to 28 U.S.C. § 1338(b).

29.     This Court has supplemental subject matter jurisdiction over this breach of contract claim pursuant to 28. U.S.C. § 1367(a).

30.     Under N.Y.C.P.L.R. 302(a)(1), this Court has personal jurisdiction over Defendants Plano Synergy Holdings, Synergy Outdoors, LLC, WildGame Innovations, and

Flextone Game Calls as these Defendants transact business within the state and also contract to supply goods and services within the state.

31.     Business is conducted and goods are sold in New York by Defendants Plano Synergy Holdings, Synergy Outdoors, LLC, WildGame Innovations, and Flextone Game Calls both online and through authorized dealers located in New York.

32.     Upon information and belief, Defendants Plano Synergy Holdings, Synergy Outdoors, LLC, WildGame Innovations, and Flextone Game Calls have placed also products into the stream of commerce with the expectation that the products will be purchased in the state of New York and with voluntary and purposefully direction toward the state of New York.

33.     Upon information and belief, these products include a product which infringes Plaintiff's patent, either by direct infringement, contributory infringement, or inducement of infringement.

34.     The causes of action included below arise from the actions of Defendants Plano Synergy Holdings, Synergy Outdoors, LLC, WildGame Innovations, and Flextone Game Calls as required by N.Y.C.P.L.R. 302(a)(1).

35.     Under N.Y. C.P.L.R. 302(a)(2), this Court has personal jurisdiction over Defendants Plano Synergy Holdings, Synergy Outdoors, LLC, WildGame Innovations, and Flextone Game Calls, as Defendants Plano Synergy Holdings, Synergy Outdoors, LLC, WildGame Innovations, and Flextone Game Calls have together committed a tortious act within the State of New York.

36.     Defendants Plano Synergy Holdings, Synergy Outdoors, LLC, WildGame Innovations, and Flextone Game Calls have sold and/or caused to be sold products which

infringe, either by direct infringement, contributory infringement, or inducement of infringement, a patent owned by Plaintiff within the state of New York.

37.     Under N.Y. C.P.L.R. 302(a)(3), this Court has personal jurisdiction over Defendants Plano Synergy Holdings, Synergy Outdoors, LLC, WildGame Innovations, and Flextone Game Calls as Defendants Plano Synergy Holdings, Synergy Outdoors, LLC, WildGame Innovations, and Flextone Game Calls have together committed a tortious act without the State of New York causing injury within New York.

38.     Defendants Plano Synergy Holdings, Synergy Outdoors, LLC, WildGame Innovations, and Flextone Game Calls have sold and/or caused to be sold products which infringe, either by direct infringement, contributory infringement, or inducement of infringement, a patent owned by Plaintiff within and without the State of New York, causing financial and economic injury to the Plaintiff, a New York corporation, and violating Plaintiff's right to exclusive use of the Plaintiff's patented invention.

39.     Defendants Plano Synergy Holdings, Synergy Outdoors, LLC, WildGame Innovations, and Flextone Game Calls i) derive substantial revenue from goods used in the State of New York, and ii) should reasonably expect their acts to have consequences in the State of New York and derive substantial revenue from interstate commerce.

40.     Under N.Y. C.P.L.R. 302(a)(2), this Court has personal jurisdiction over Defendant The Sports Products, as Defendant The Sports Products has committed a tortious act within the State of New York.

41.     Defendant The Sports Products manufactures for sale or imports products which infringe, either by direct infringement, contributory infringement, or inducement of infringement, a patent held by Plaintiff.

6

42.     These products are sold within the state of New York.

43.     Under N.Y. C.P.L.R. 302(a)(3), this Court has personal jurisdiction over Defendant The Sports Products, as Defendant The Sports Products has committed a tortious act without the State of New York causing injury within New York.

44.     Upon information and belief, Defendant The Sports Products manufactures or imports a product which infringes a patent held by Plaintiff.

45.     Upon information and belief, the product manufactured or imported by Defendant The Sports Products is sold and/or offered for sale within and without the State of New York, causing financial and economic injury to the Plaintiff, a New York corporation, and violating Plaintiff's right to exclusive use of the patented invention.

46.     Defendant The Sports Products i) derives substantial revenue from goods used in the State of New York, and ii) should reasonably expect its acts to have consequences in the State of New York and derives substantial revenue from interstate commerce

47.     This Court has personal jurisdiction over the Defendants by virtue of the Defendants' breach of a Non-Disclosure Agreement governed by New York law.

48.     Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b), (c), and (d) as well as 1400(b).

49.     Plaintiff alleges that this district is proper because, *inter alia*, Defendants reside in this district under the abovementioned statutes.

50.     Further, venue is proper as a substantial part of the events giving rise to the claims occurred in this district including, but not limited to, the original development of the patented product and at least a portion of Defendants' infringing sales.

7

## STATEMENT OF FACTS

**The Turkey Decoy Patent**

51.     Hudson Valley Resources G.P. provisionally applied for a patent on a turkey decoy device on January 4, 2011, having a provisional application number 61/429,656, hereinafter "the '656 Application." A copy of the '656 Application is attached as Exhibit B.

52.     On February 18, 2011, Hudson Valley Resources G.P. filed a nonprovisional application having an Application Number 13/030,229, hereinafter "the '229 Application," claiming priority to the '656 Application.

53.     On April 29, 2014, a patent was granted on the '229 Application, having U.S. Patent Number 8,707,611, hereinafter "the '611 Patent." A copy of the issued '611 patent is attached as Exhibit C.

54.     The inventor of the '611 Patent is Jason Michael.

55.     Plaintiff ITS Innovations, LLC is now the sole owner of the '611 Patent.

56.     The '229 Application was originally assigned to Hudson Valley Resources G.P.

57.     This assignment is recorded with the United States Patent and Trademark Office at Reel 026370; Frame 0725.

58.     The paperwork recorded with the United States Patent and Trademark Office for the original assignment mistakenly listed Hudson Valley Resources as a Limited Liability Company; Hudson Valley Resources was instead a General Partnership in which Gregory Samaras, Jason Michael, and Ed Boll were partners.

59.     Hudson Valley Resources, G.P. held itself out as the sole owner and right holder of the '656 Application, the '229 Application and the '611 Patent at all times prior to the dissolution of the partnership.

60.     On August 8, 2014, Hudson Valley Resources, G.P. was dissolved and the '611 Patent was assigned, conveyed, and transferred to Gregory Samaras, along with all other Partnership property and interests.

61.     Gregory Samaras then assigned, conveyed, and transferred the right, title, interest, and ownership of the '611 Patent to Plaintiff, ITS Innovations, LLC, along with all other property and interests formerly belonging to the Partnership.

62.     The assignment of the '611 Patent is recorded with the United States Patent and Trademark Office at Reel 033964; Frame 0753.

63.     The Plaintiff ITS Innovations, LLC is thus the sole assignee and owner of the '611 patent and holds all rights therein.


**Plaintiff's Confidential Negotiations with The Sports Products and Shawn Ferguson**

64.     Hudson Valley Resources G.P. was formed in order to make and market the partners' many ideas for new hunting and gaming products.

65.     Plaintiff ITS Innovations was formed with the same goal—to make and market new hunting and gaming products.

66.     The Partners of Hudson Valley Resources G.P. agreed to allow Gregory Samaras and Plaintiff ITS Innovations to pursue the marketing of the technology covered in the '611 Patent.

67.     Gregory Samaras and Frank Lovich worked together for Plaintiff ITS Innovations, to facilitate the advance of these ideas through the manufacturing process and ultimately to market.

68.     Frank Lovich had experience working with multiple large companies in the hunting, gaming, and outdoor industries.

69.     For example, Frank Lovich has helped place products into brand name stores such as Walmart, Cabelas, Bass Pro Shops, and Dick's Sporting Goods.

70.     Using his contacts, Frank Lovich was able to pursue negotiations with retailers Dick's, Cabelas, Gander Mtn., and Academy Sports+Outdoors for Plaintiff's Products.

71.     Frank Lovich also used his connections to help orchestrate a manufacturing, marketing, and retailing system for Plaintiff's products.

72.     Plaintiff, by its representatives Gregory Samaras and Ed Boll met with Shawn Ferguson, Walt Davis, and Bill McIntyre on or about June/July 2010 to discuss Plaintiff's hunting products.

73.     Shawn Ferguson, Walt Davis, and Bill McIntyre represented to Plaintiff that these negotiations were entirely confidential.

74.     Upon information and belief, Shawn Ferguson worked for Outtech Inc. and Asian American Global Trading Partners.

75.     Upon information and belief, Outtech Inc. and Asian American Global Trading Partners were engaged in the business of facilitating arrangements between the developers and manufacturers of hunting/outdoor equipment and retail stores or dealers.

76.     These companies also sell and offer for sale products to national sporting goods retailers.

77.     Upon information and belief, Walt Davis worked for Defendant The Sports Products, LLC.

78.     Upon information and belief, Bill McIntyre worked for Defendant The Sports Products, LLC.

79.     Upon information and belief, Defendant The Sports Products, LLC was engaged in the business of manufacturing and producing sports, hunting, and outdoor equipment for retail to consumers by its select partner companies.

80.     Upon information and belief, part of Shawn Ferguson's work for Outtech Inc. and Asian American Global Trading Partners included a commission-based contracting role with Defendant Flextone Game Calls.

81.     Plaintiff, as well as the previous owner of the patent, Hudson Valley Resources, G.P., through Gregory Samaras, and with the help of Mr. Lovich, wished to use Shawn Ferguson's relationship with Flextone Game Calls to begin contract negotiations regarding Hudson Valley Resources' and ITS Innovations' hunting and gaming products.

82.     The arrangement envisioned that Bill McIntyre, Walt Davis, and Defendant The Sports Products, LLC would manufacture Plaintiff's products, and the products would be sold under the Flextone Game Calls brand.

83.     Bill McIntyre and Walt Davis also put Gregory Samaras in contact with Dean Reagan at Defendant Flextone Game Calls in order for Mr. Samaras and Mr. Reagan to negotiate the details of the contemplated arrangement whereby Defendant Flextone Game Calls would sell Plaintiff's product following manufacture by Defendant The Sports Products, LLC.

84.     This plan resulted in the June/July 2010 meeting between Gregory Samaras, Shawn Ferguson, Walt Davis, and Bill McIntyre.

85.    Upon information and belief, each of these parties, Shawn Ferguson, Walt Davis, and Bill McIntyre, signed nondisclosure agreements with Gregory Samaras during the June/July 2010 meeting that stated that Plaintiff's products would be kept confidential.

86.    Upon information and belief, Shawn Ferguson, Walt Davis, and Bill McIntyre made oral representations to Gregory Samaras that Plaintiff's products would be kept confidential.

87.    Upon information and belief, the nondisclosure agreements between Shawn Ferguson, Walt Davis, Bill McIntyre, and Gregory Samaras was agreed to be governed and construed in accordance with New York law.

88.    In the nondisclosure agreements and oral representations, Shawn Ferguson, Walt Davis, and Bill McIntyre agreed not to make any unauthorized use or disclosure of the Plaintiff's ideas.

89.    Because an ongoing relationship was expected, the parties agreed that all ideas and products discussed between them would be kept confidential.

90.    This agreement of confidentiality extended to any products discussed by Hudson Valley Resources, ITS Innovations, or any of the individuals at the meeting without limitation on the time of disclosure.

**Plaintiff's Confidential Negotiations with Defendant Flextone Game Calls**

91.    After the June/July 2010 meeting, Plaintiff continued to develop products, including a product by the name of The Little Runt.

92.    The claims of the '611 Patent read on The Little Runt product.

93.     On or about January 2011, Gregory Samaras, on behalf of ITS Innovations and Hudson Valley Resources, G.P., met with the Director of Business Development and Brand Manager for Flextone Game Calls, Dean Reagan, at the 2011 Archery Trade Association (ATA) meeting.

94.     On or about January 2011, Gregory Samaras and Flextone Game Calls including Dean Reagan had at least one discussion, hereinafter "the January 2011 Discussion(s)," about the arrangements initially contemplated in the June/July 2010 meeting with Shawn Ferguson, Walt Davis, Bill McIntyre, and Gregory Samaras.

95.     The January 2011 Discussion(s) included arrangements for The Little Runt product to be included as a product that would be manufactured and sold under arrangements contemplated in the June/July 2010 discussion.

96.     The January 2011 Discussion(s) thus contemplated that The Little Runt would be manufactured by The Sports Products, LLC and then marketed to independent retailers under the Flextone Game Calls brand.

97.     The January 2011 Discussion(s) were conducted under a duty of confidentiality between Gregory Samaras and Dean Reagan.

98.     Upon information and belief, during the January 2011 Discussion(s), Dean Reagan signed a Non-Disclosure Agreement regarding the material discussed, including information regarding The Little Runt.

99.     During the January 2011 Discussion(s), Gregory Samaras and Dean Reagan discussed an arrangement whereby Plaintiff would become a development team for Flextone Game Calls and its affiliated companies.

100.   As a development team, Plaintiff wished to be compensated by a profit-sharing arrangement, rather than by licensing fees or royalty payments.

101.   On or about January 2011, Gregory Samaras provided Defendant Flextone Game Calls with The Little Runt concept.

102.   On or about January 2011, Gregory Samaras explained all of the novel features of The Little Runt in detail to Defendant Flextone Game Calls.

103.   On or about January 2011, Gregory Samaras also provided details of other inventions and products Plaintiff had developed to Defendant Flextone Game Calls.

104.   Gregory Samaras' goal in these negotiations, acting as an officer of Plaintiff and as a Partner of Hudson Valley Resources, G.P., was to partner with Defendant Flextone Game Calls in the marketing and sales of these products and to act as a design/development team for Defendant Flextone Game Calls.


**The Relationship between Defendant Flextone Game Calls and Plaintiff**

105.   The relationship between Plaintiff and Defendant Flextone Game Calls proceeded to the point that Dean Reagan and Defendant Flextone Game Calls enlisted Defendant The Sports Products, LLC to begin manufacturing prototypes of the Plaintiff's products.

106.   Prototypes of The Little Runt product were made by Defendant The Sports Products at this time.

107.   However, Plaintiff and Defendant Flextone Game Calls had several disagreements over the specifications of the prototypes.

108.   Gregory Samaras and Plaintiff had concerns regarding delays by Defendants Flextone Game Calls and The Sports Products which resulted in missed hunting seasons for their products.

109.   Defendant Flextone Game Calls refused to compensate Plaintiff by a profit-sharing arrangement or to acknowledge them as a development team.

110.   Instead, Defendant Flextone Game Calls only offered a royalty.

111.   Plaintiff made it clear that these terms were not acceptable.

112.   On May 2, 2011, Dean Reagan, on behalf of Defendant Flextone Game Calls, informed Gregory Samaras via email that there would be no partnership between Defendant Flextone Game Calls and Plaintiff.

113.   Dean Reagan also told Gregory Samaras that Plaintiff would be better off pursuing its own outdoor company.

114.   Further, Dean Reagan expressed his opinion that The Little Runt looked great and would be a successful hunting product for Plaintiff.


**Plaintiff's Independent Marketing and Manufacturing of The Little Runt Product**

115.   Following collapse of its relationship with Defendants The Sports Products and Flextone Game Calls, Plaintiff decided to pursue its own manufacturing and product placement.

116.   Plaintiff continued to use Frank Lovich's services.

117.   Frank Lovich used his contacts and connections to obtain an agreement with DDI Inc., in which DDI would procure mass-manufactured units of The Little Runt for shipping to retail stores.

118.   In order to cement this relationship and facilitate development of The Little Runt, Frank Lovich uprooted his family and infant child and moved to Iowa to work with DDI, Inc.

119.   Frank Lovich did this without being able to sell his house first, incurring great personal and family cost.

120.   Frank Lovich continued to use his experience and connections in the industry to negotiate placement of The Little Runt product in stores across the country.

121.   Frank Lovich was able to secure an initial request from Dick's Sporting Goods for approximately 8,000 to 10,000 units of The Little Runt product for retail in its stores and online.

122.   Plaintiff received and filled a purchase order from Dick's Sporting Goods for over 3,000 units of The Little Runt product.

123.   According to the agreement with Dick's Sporting Goods, The Little Runt product was to be sold for $34.99 at Dick's Sporting Goods stores and online.

124.   DDI, Inc., at Plaintiff's direction, had approximately 15,000 units of The Little Runt product manufactured, in order to fill its orders from Dick's Sporting Goods and in anticipation of purchase orders from Frank Lovich's other contacts and connections.

125.   Frank Lovich was at this time engaged in promising negotiations with Cabelas and Gander Mtn. on Plaintiff's behalf.

126.   Frank Lovich had also reached out to Academy Sports+Outdoors.

127.   Each of these stores showed strong interest in carrying Plaintiff's The Little Runt product.

**The Competing Funky Chicken Product**

128.   The negotiations with these other stores broke down, as both Cabelas and Gander Mtn. informed Frank Lovich that while they were interested in carrying The Little Runt product, they had an existing vendor who was offering the same product to them.

129.   Upon information and belief, this vendor was Defendant Flextone Game Calls.

130.   Upon information and belief, the product being offered was the Funky Chicken product made by Defendant Flextone Game Calls.

131.   Upon information and belief, the Funky Chicken product was being manufactured by Defendant The Sports Products, using information obtained through the earlier negotiations with Plaintiff.

132.   Academy Sports+Outdoors also informed Frank Lovich that they would be carrying a similar product marketed by Defendant Flextone Game Calls.

133.   Further, at this time Dick's Sporting Goods canceled the remaining amount of its order for Plaintiff's The Little Runt product, approximately 5,000 units.

134.   Representatives of Dick's Sporting Goods also informed Frank Lovich that customers had begun asking for the Funky Chicken product instead of The Little Runt product.

135.   Further, these same representatives admitted that multiple customers had expressed their opinion that Plaintiff's The Little Runt product was a knock-off or counterfeit of Defendant Flextone Game Calls' Funky Chicken product.

**Unfair Competition by Defendant Flextone Game Calls**

136.   The Defendants' Funky Chicken product bears a striking resemblance to Plaintiff's The Little Runt product.

137.   The Defendants' Funky Chicken product infringes the claims of the '611 Patent.

138.   Upon information and belief, Flextone Game Calls developed this product based upon Plaintiff's The Little Runt product.

139.   Further, the development of Defendant Flextone Game Call's Funky Chicken product was accomplished using the information disclosed to Defendant Flextone Game Calls' representative Dean Reagan and Defendants The Sports Products representatives Walt Davis and Bill McIntyre, including but not limited to the detailed description provided by Gregory Samaras and Plaintiff and the prototypes already developed as part of the production strategy of Hudson Valley Resources, G.P. and Plaintiff.


**Further Negotiations with Defendant Plano Synergy Holdings and WildGame Innovations**

140.   Following development and field-testing of Defendant Flextone Game Calls' competing Funky Chicken product, Plaintiff was contacted by Ryan Busbice of Defendant Synergy Outdoors, the company which owns the Defendant Flextone Game Calls, regarding Defendant Synergy Outdoors' expressed desire to license Plaintiff's The Little Runt product.

141.   Defendant Synergy Outdoors began negotiations with Plaintiff to attempt to license the right to make and sell Defendant's The Little Runt product.

142.   These negotiations were between Gregory Samaras representing Plaintiff and Hudson Valley Resources, G.P., and Ryan Busbice, the Chief Executive Officer of Defendant Synergy Outdoors.

143.   Plaintiff, through its representative Gregory Samaras, continued to maintain that a simple licensing agreement with royalty payments was not satisfactory and that Plaintiff was

interested in a partnership between itself and Defendant Flextone Game Calls' and/or Defendant Synergy Outdoors and/or Defendant Plano Synergy Holdings.

144.   Ryan Busbice delayed these negotiations for over a month only to tell Plaintiff that Defendant Synergy Outdoors was not in a financial position to make any deals with Plaintiff.

145.   Upon information and belief, the pretense of negotiations was made by Mr. Busbice only to delay any action by Plaintiff in taking advantage of the short turkey hunting season.

146.   Further, upon belief, these negotiations were only entered into by Mr. Busbice to ensure that Defendant Plano Synergy Holding's competing product, marketed and sold by its subsidiary Flextone Game Calls, was the only comparable decoy on the market at the time of its release.

**Plaintiff's Loss of First-Mover Advantage and Brand Recognition**

147.   Due to the Defendants' actions, Plaintiff was not able to capture the initial sales and brand name recognition that accompanies being the first company to market and sell a novel product.

148.   Instead, the Defendants were able to make these sales and grow their own brand.

149.   As a result of the Defendants' unfair competition, customers mistakenly believed and continue to believe that Plaintiff's The Little Runt product is a knock-off or imitation of the Defendants' infringing Funky Chicken product.

150.   Because of the nature of the hunting goods industry, Plaintiff will now have difficulty introducing its own product into the market in an effective manner.

151.   In order to even begin sales of its own products, Plaintiff would have to cut its price substantially in order to compete with Defendants' Funky Chicken product.

152.   Such a strategy would result in diminished profits for Plaintiff.

153.   Absent Defendants' bad faith and unfair competition, Plaintiff would be the sole market participant for decoys such as The Little Runt.

154.   Finally, even if Plaintiff obtains some commercial success, its product will always be viewed as a "knock-off" or imitation of the Defendants' product and Plaintiff's market presence will be hampered by such consumer opinions.

155.   The initial sales made by virtue of Defendants' unfair competition, combined with the resulting customer confusion have caused and continue to cause irreparable harm to Plaintiff, its business, and its patented product.

**Defendant Flextone Game Calls' and Plano Synergy Holdings' Infringing Product**

156.   Upon belief, Defendant Flextone Game Calls and Defendant Plano Synergy Holdings used the time during ITS's negotiations with Dean Reagan and Ryan Busbice to prepare their competing product for consumer launch.

157.   This competing product was released as the Funky Chicken product under the Flextone Game Calls brand name.

158.   On January 10, 2014, counsel for Plaintiff provided Ryan Busbice of Flextone Game Calls, WildGame Innovations, and Plano Synergy Holdings with a letter detailing that The Little Runt product was the subject of a pending patent application (U.S. Published Patent Application 2012/0167445 (Serial No. 13/030,229)).

159.   This letter also indicated that Flextone Game Calls' and Plano Synergy Holdings' Funky Chicken decoy was likely to infringe the patent should the USPTO grant the application.

160.   This letter also gave Defendants Flextone Game Calls, WildGame Innovations, and Plano Synergy Holdings  notice of the repercussions of any knowing and willful infringement of a patent, stating:

> Moreover, companies that are provided with actual notice of pending patent applications, such as this letter, may be liable for past damages under 35 U.S.C. § 287(a) of the 1952 Patent Act when the patent does finally issue.   These past damages are damages which accrue during the patent pending stage prior to a patent being granted.

161.   Defendants Flextone Game Calls, WildGame Innovations, and Plano Synergy Holdings continued to offer the Funky Chicken for sale, apparently paying no heed to Plaintiff's letter.

162.   Upon information and belief, the Funky Chicken product has been sold throughout the United States.

163.   Upon information and belief, the Funky Chicken product has been sold in New York through Defendants' website www.flextonegamecalls.com.

164.   Upon information and belief, the Funky Chicken product has been sold in New York through third-party retailers including Amazon.com.

165.   Upon information and belief, the Funky Chicken product has been sold in New York through the Defendants' authorized dealers.


**The Little Runt Patent and Defendants' Infringement**

166.   The Little Runt patent (8,707,611) was granted on April 29, 2014.

167.   On the day The Little Runt patent issued, April 29, 2014, counsel representing Defendant Plano Synergy Holdings and its subsidiary and affiliate Defendant Flextone Game Calls responded to ITS Innovations' January 10, 2014 notice letter.

168.   The Defendants' April 29, 2014 letter referenced the '611 patent, indicating Defendants' knowledge thereof.

169.   This response claimed that there was no infringement of The Little Runt Patent by the Funky Chicken decoy product.

170.   Defendants' counsel also threatened to pursue invalidation of the '611 patent should Plaintiff attempt to exercise any legal rights granted by the patent against the Defendant Funky Chicken product, Plano Synergy Holdings, or Flextone Game Calls.

171.   Even after issuance of the '611 patent, Defendant Flextone Game Calls, Wildgame Innovations, and Plano Synergy Holdings continued to produce and sell the Funky Chicken product.

172.   The assembled Funky Chicken product infringes the '611 patent.

173.   The use of the Funky Chicken product infringes the '611 patent.

174.   Defendants aid and encourage customers of the Funky Chicken to assemble and use the Funky Chicken in a manner that infringes the '611 patent by providing said customers with Funky Chicken components, pictures of the assembled Funky Chicken, and/or instructional videos on how to hunt with the Funky Chicken.

175.   Defendants' customer do in fact directly infringe the '611 patent through their assembly and use of the Funky Chicken.

176.   Upon information and belief, the Defendant The Sports Products has continued to manufacture the Funky Chicken product for the other Defendants.

22

177.   Upon information and belief, Defendants and their customers have infringed the claims of U.S. Patent No. 8,707,611 either by direct infringement, contributory infringement, or inducement of infringement, through their making, using, offering to sell, selling, importing, or providing the Funky Chicken product.

**Continuing Patent Infringement**

178.   Defendants Flextone Game Calls, Wildgame Innovations, and Plano Synergy Holdings have continued to produce, market, sell, and offer for sale the Funky Chicken product.

179.   The Funky Chicken product was sold and is still being sold by numerous stores across the country including within the State of New York.

180.   The Funky Chicken has been offered for sale online both through Defendant Flextone Game Calls' website www.flextonegamecalls.com and third party retailers for purchase and shipment to any location within the U.S. including New York.

181.   The Funky Chicken product is also advertised and available for purchase and shipment to any location in the U.S. through Amazon.com, Walmart, Gander Mtn., Bass Pro Shops, Cabelas, Academy Sports + Outdoor, Bonanza – Vision Outfitters, Bow Pro Shop, BowhuntingOutlet.com, Bowhunters SuperStore International, BradCo Outdoors, CheaperThanDirt.com, Native Outdoors, eders.com, Find&Save.com, GrabAGun.com, GeorgeSports.com, HuntersHaven.com, Joe's Sporting Goods, Kentucky Lake Outdoors, Lancaster Sporting Goods, Mack's Prairie Wings, Native Outdoors, Outdoors Experience, Rogers Sporting Goods, Sportsman's Warehouse, TackleThisShootThat.com, teresaera.com, Walnut Creek Outdoors, and others.

182.   The Funky Chicken product is listed under an Amazon profile named "Flextone".

183.   The Funky Chicken product is readily available for purchase in New York through third-party retailers including box stores and sporting goods retailers.

184.   Upon information and belief, the Funky Chicken product is manufactured by the Defendant The Sports Products.

185.   Upon information and belief, the Funky Chicken product is imported by the Defendant The Sports Products.

## COUNT I

### Patent Infringement

186.   The Plaintiff repeats and realleges the allegations in paragraphs 1-185 as if fully set forth herein.

187.   The Defendants Flextone Game Calls, Wildgame Innovations, Plano Synergy Holdings, and The Sports Products have made and manufactured a product, the Funky Chicken.

188.   Upon information and belief, the assembled Funky Chicken product directly infringes Plaintiff's '611 Patent.

189.   Upon information and belief, the use of the Funky Chicken product in turkey hunting infringes Plaintiff's '611 Patent.

190.   Upon information and belief, there is no substantial noninfringing use for the Funky Chicken product.

191.   The Defendants were placed on notice that the Funky Chicken product would likely infringe a patent issuing from the '656 Application.

192.   The Defendants acknowledged the issued '611 patent in their April 29, 2014 letter.

193.   Defendants aid and encourage customers to assemble and use the Funky Chicken in a manner that infringes the '611 patent by providing said customers with Funky Chicken components, pictures of the assembled Funky Chicken, and/or instructional videos on how to hunt with the Funky Chicken.

194.   Through the making, using, selling, offering for sale, and importing of the Funky Chicken and any of its components, the Defendants and their customers have infringed Plaintiff's '611 Patent.

195.    The Defendants' and their customers' infringement includes direct infringement, contributory infringement, and inducement of infringement.

196.    The Defendants Flextone Game Calls, Wildgame Innovations, Plano Synergy Holdings, and The Sports Products have imported the infringing Funky Chicken product into the United States.

197.    The Defendants Flextone Game Calls, Wildgame Innovations, Plano Synergy Holdings, and The Sports Products have sold and offered this infringing product for sale to other companies for resale.

198.    The Defendants Flextone Game Calls, Wildgame Innovations, Plano Synergy Holdings, and The Sports Products have sold this infringing product to consumers or have caused this infringing product to be sold to consumers.

199.    The infringing product is readily available for purchase across the United States, on the internet, and presumably world-wide.

200.    The Defendants' sale of the infringing product has caused and continues to cause irreparable harm to Plaintiff's business and the goodwill associated with its product, The Little Runt.

## COUNT II

### Unfair Competition

201.   The Plaintiff repeats and realleges the allegations in paragraphs 1-200 as if fully set forth herein.

202.   The Defendants Plano Synergy Holdings, WildGame Innovations, Flextone Game Calls, and The Sports Products have acted unfairly by taking ITS Innovations' ideas and products, which were revealed to them in confidence as part of business negotiations, and manufacturing, marketing, and selling them as their own.

203.   The Defendants Plano Synergy Holdings, WildGame Innovations, Flextone Game Calls, and The Sports Products have taken this unfair action in direct violation of their non-disclosure agreements with Plaintiff.

204.   Defendants Plano Synergy Holdings, WildGame Innovations, Flextone Game Calls, and The Sports Products have prevented Plaintiff from capitalizing financially on its invention and product.

205.   Defendants Plano Synergy Holdings, WildGame Innovations, Flextone Game Calls, and The Sports Products have used their inside knowledge of Plaintiff's product to precede Plaintiff in the marketplace and prevent Plaintiff from taking advantage of being the first to offer their novel product for sale.

206.   Further, the Defendants have each obtained improper financial benefit from this unfair competition with Plaintiff's business.

207.   Defendants Plano Synergy Holdings, WildGame Innovations, and Flextone Game Calls have benefitted improperly by themselves being the first to offer the product in the market, a position they only achieved through their use of Plaintiff's ideas and products.

208.   Defendant The Sports Products has benefitted improperly by acquiring manufacturing and product brokering business for a product that they knew or should have known was misappropriated by its fellow Defendants from the Plaintiff.

209.   The Defendants' unfair competition and sale of the infringing product has caused and continues to cause irreparable harm to Plaintiff's business and the goodwill associated with its product, The Little Runt.

## COUNT III

### Breach of Contract

210.   The Plaintiff repeats and realleges the allegations in paragraphs 1-209 as if fully set forth herein.

211.   Each of the Defendants has, through their representatives and as described in the above facts, signed a nondisclosure agreement and agreed to not use the Plaintiff's intellectual property without authorization.

212.   Each of the Defendants has, through their representatives and as described in the above facts, orally agreed to receive and not divulge or use Plaintiff's Confidential Information relating to its hunting and gaming products and product ideas.

213.   Each of the Defendants represented to Plaintiff that the negotiations regarding business ventures were confidential and that any information disclosed would remain confidential.

214.   Each of the Defendants is currently using the Plaintiff's intellectual property in a way expressly prohibited by these nondisclosure agreements, oral promises, and representations during negotiations.

215. Further, these breaches of the nondisclosure agreements and oral promises are harming Plaintiff's business and have interfered with its contractual relations with multiple retail partners.

216. Defendants have also profited financially from these intentional breaches of the nondisclosure agreement and oral promises, as well as from their misrepresentations of the confidentiality of the negotiations.

217. The Defendants' breach of contract has caused and continues to cause irreparable harm to Plaintiff's business.

**WHEREFORE**, the Plaintiff prays:

a)   For a judgment that the Defendant Flextone Game Calls' Funky Chicken product infringes Plaintiff's U.S. Patent No. 8,707,611;

b)   For a judgment that the use of the Defendant Flextone Game Calls' Funky Chicken product infringes Plaintiff's U.S. Patent No. 8,707,611;

c)   For a judgment that Defendant Flextone Game Calls has therefore infringed Plaintiff's U.S. Patent No. 8,707,611, by direct, contributory, and/or inducement of infringement;

d)   For a judgment that the Defendants Plano Synergy Holdings, Synergy Outdoors, WildGame Innovations, Flextone Game Calls, and The Sports Products, have also engaged in patent infringement by making, selling, and offering for sale the Funky Chicken;

e)   For a judgment that the Defendants Plano Synergy Holdings, Synergy Outdoors, WildGame Innovations, Flextone Game Calls, and The Sports Products, have engaged in unfair competition;

f)   For a judgment that the Defendants Plano Synergy Holdings, Synergy Outdoors, WildGame Innovations, Flextone Game Calls, and The Sports Products have breached their respective contracts with the Plaintiff;

g)   For a judgment that Defendants' actions are causing irreparable harm to Plaintiff's business;

h)   For a preliminary injunction preventing the Defendants from continuing to manufacture and sell the competing product the Funky Chicken;

i)      This Court award damages to the Plaintiff resulting from the Defendants' patent infringement;

j)      This Court award damages to the Plaintiff resulting from the unfair competition;

k)      This Court award damages to the Plaintiff resulting from Defendants' breaches of the nondisclosure agreements;

l)      This Court award a reasonable royalty to the Plaintiff for the Defendants' patent infringement, including but not limited to a fee that the Plaintiff would have hypothetically negotiated with the Defendants as a license for the patented technology;

m)      For a judgment that Defendants' online sales of the Funky Chicken through third-party retailers constitute further infringement;

n)      This Court award damages based upon these online sales by third-party retailers;

o)      This Court permanently enjoin the Defendants Plano Synergy Holdings, Synergy Outdoors, WildGame Innovations, Flextone Game Calls, and The Sports Products, as well as any of their affiliated companies, subsidiary companies, parent companies, or contractors from making or selling the Funky Chicken or a similar device;

p)      This Court award Plaintiff treble damages based upon Defendants Plano Synergy Holdings', Synergy Outdoors', WildGame Innovations', Flextone Game Calls', and The Sports Products' willful infringement of the 8,707,611 patent;

q)      This Court award Plaintiff punitive damages;

r)      This Court award Plaintiff attorneys' fees; and

s)      This Court grant such other relief as the Count deems just.

## JURY DEMAND

The Plaintiff demands a trial by jury on all issues properly tried to a jury.

DATED: May 21, 2015

Allen L. Olsen, Bar No. 507492
Attorney for Plaintiff
Schmeiser, Olsen & Watts LLP
22 Century Hill Drive, Ste. 302
Latham, New York 12110
Telephone: (518) 220-1850
Facsimile: (518) 220-1857
E-mail: aolsen@iplawusa.com